ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 MAY 25 PM 4:01
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ELIZABETH JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 310-038 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Elizabeth Jones ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") regarding her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I. BACKGROUND

Plaintiff applied for DIB on October 9, 2003, alleging a disability onset date of July 15, 2003.[1] Tr. ("R."), p. 71. The Social Security Administration denied Plaintiff's

---

[1] Plaintiff later filed an additional application for DIB on October 13, 2006, which was considered a duplicate application and was consolidated with her initial application because

applications initially, R. 56-59, and on reconsideration, R. 51-55. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on March 28, 2006. R. 776-99. In the March 2006 hearing, the ALJ heard testimony from Plaintiff, who was represented by a non-attorney representative, as well as a Vocational Expert ("VE"). R. 781, 794. On April 25, 2006, the ALJ issued an unfavorable decision. R. 300-06.

Plaintiff requested review from the Appeals Council ("AC"), which vacated the ALJ's April 25th decision and remanded the case with an instruction to give the claimant an opportunity for another hearing because the tape recording of the March 2006 hearing had been lost. R. 317-19. The ALJ received additional evidence and held a second hearing on February 26, 2009, at which he heard additional testimony from Plaintiff and a different VE than had testified at the original hearing.[2] R. 801-827. The ALJ issued a partially favorable decision on August 14, 2009. Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful employment since the alleged onset of disability (20 C.F.R. §§ 404.1517 *et seq.* & 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity,

---

it pertained to the same time period. R. 18. Plaintiff also appears to have protectively filed for SSI on October 13, 2006, and her SSI application was also consolidated with the other applications, though it pertains to a different time period. See id.

[2]In the February 2009 hearing, Plaintiff was represented by the same non-attorney representative that represented her in the previous hearing. R. 801. Notably, Plaintiff had retained an attorney, who appears to have represented her from the time she initially applied for DIB; however, the non-attorney representative appeared on Plaintiff's behalf at both hearings. R. 18, 776, 801.

2

> > osteoarthritis of the knee, status-post total knee replacement, degenerative disc disease of the lumbar spine, and history of allergies (20 C.F.R. §§ 404.1520(c) & 416.920(c)).
>
> 3. Prior to January 1, 2009, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. However, beginning on January 1, 2009, the severity of claimant's osteoarthritis of the knee, status post total knee replacement meets Listing 1.02. Accordingly, the claimant became disabled on January 1, 2009 (20 C.F.R. §§ 404.1520(d) & 416.920(d)).
>
> 4. Prior to January 1, 2009, the date the claimant became disabled, the claimant had the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently; within an eight-hour workday, to sit for two to three hours continuously for total of four to six hours and to walk and/or stand for one to two hours continuously for a total of four to six hours; and to stoop, kneel, and climb a flight of stairs occasionally but never crawl or climb ropes, ladders, or scaffolds. Additionally, the claimant should have avoided exposure to concentrated respiratory irritants, such as fumes and dust. Based on this RFC assessment and testimony from the VE, prior to January 1, 2009, the claimant was able to perform her past relevant work as a security guard, teacher's aide (substitute teacher), inspector, cashier, bus driver, and sewing machine operator. Therefore, the claimant was not disabled prior to January 1, 2009 (20 C.F.R. §§ 404.1520(g) & 416.920(g)).[3]

R. 21-28.

When the AC denied Plaintiff's request for review of the ALJ's August 14, 2009 decision, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff

---

[3] Notably, December 31, 2006, was the last date on which Plaintiff met the insured status requirements of the Social Security Act. R. 21. Accordingly, the ALJ's determination that she became disabled on January 1, 2009, entitled her to SSI as of that date but denied her DIB altogether. See R. 28-29.

3

argues that the ALJ made an improper RFC assessment, improperly inferred the onset date of Plaintiff's disability, erroneously concluded that Plaintiff was capable of performing her past relevant work, and failed to adequately consider the disabling effect of Plaintiff's pain. (See generally doc. no. 9 (hereinafter "Pl.'s Br."); doc. no. 11 (hereinafter "Pl.'s Reply Br.").) The Commissioner maintains that the Commissioner's decision was supported by substantial evidence and should be affirmed. (See generally doc. no. 10 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff presents several distinct arguments in support of her assertion that the Commissioner's decision should be reversed; as noted above, she argues that the ALJ erred in his RFC assessment, his inference of the onset date of Plaintiff's disability, his conclusion that Plaintiff was capable of performing her past relevant work, and his consideration of Plaintiff's pain. See Pl.'s Br., p. 4. However, there is no need describe these arguments in detail, as the Court finds that remand is required in light of the fact that key pieces of evidence from Plaintiff's treating physician relied upon by the ALJ are not present in the

administrative record before the Court.

In particular, the ALJ references treatment records covering the period from November 2007 through April 2008. See R. 26-28. The ALJ indicates that these treatment records reflect an improvement in Plaintiff's general condition. R. 26. Additionally, the ALJ cites such records in support of his finding as to Plaintiff's activities of daily living, which he reports to include housework, yard work, and exercising on a glider two to three times daily. R. 26-27. Plaintiff points out, however, that none of these treatment records are in the administrative record filed by the Commissioner in the instant case. Pl.'s Br., p. 19; Pl.'s Reply Br., pp. 7-8. The Commissioner agrees, conceding that the ALJ refers to treatment records from November 2007 to April 2008 and that, "having looked through the entire certified transcript, . . . he too has not been able to locate the records referred to."[4] Comm'r's Br., p. 11.

The missing records are particularly relevant as to the ALJ's RFC assessment. In making that assessment, the ALJ gave "great weight" to the findings and opinion of Dr.

---

[4]Following his concession regarding the evidence not in the record, the Commissioner states, "It is possible the exhibit containing [the evidence cited by the ALJ that is not in the record] was inadvertently excluded." Comm'r's Br., p. 11. The Commissioner asserts that, notwithstanding the possible improper exclusion of the missing evidence, Plaintiff "does not appear to have submitted any medical records relating to her condition over the course of 2008 . . . ." Id. The Commissioner argues that Plaintiff therefore failed to meet her burden of producing evidence of her impairments and that the ALJ's decision was appropriate given the circumstances. Id. at 11-12. The Court finds this argument unpersuasive. The Court is mindful that Plaintiff bears the burden of producing medical evidence of impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). However, the Commissioner's assertions about Plaintiff's shortcomings neither explain nor excuse the ALJ's reliance on multiple treatment records that are not in the record – including records from Plaintiff's treating physicians from 2008, the period for which Plaintiff allegedly failed to produce sufficient records.

William Hornback, Plaintiff's treating orthopedist.[5] R. 26. Indeed, the ALJ concurred with several of the findings set forth in Dr. Hornback's March 23, 2006 "Physical Capacities Exam" regarding Plaintiff's limitations with respect to activities such as sitting, standing, and walking.[6] See R. 26, 294-296. However, the ALJ specifically departed from Dr. Hornback's opinion as to the total number of hours Plaintiff could stand and/or walk during an eight-hour work day: while Dr. Hornback found Plaintiff capable of a cumulative total of two to three hours of standing or walking during an eight-hour workday, the ALJ found that she could stand and/or walk for a total of four to six hours per workday. R. 26, 294. The ALJ's justification for his deviation from Dr. Hornback's opinion was:

> the degree of improvement [Plaintiff] experienced and reported after [Dr. Hornback's] 2007 examination, as documented in treatment notes (prior to January 1, 2009) and as demonstrated in claimant's activities of daily living, which, as late as November 2007 examination, included doing housework and yard work and April 2008, exercising on a glider 2 to 3 times daily; and as corroborated by the opinion of the State agency medical consultants that she could stand and/or walk for at least 6 hours in an eight-hour workday.

R. 26. Because many of the treatment notes referred to here are missing from the record,[7]

---

[5] To be clear, although Dr. Hornback performed a consultive evaluation in March of 2007, he was Plaintiff's treating physician and his opinion must be given the deference appropriate for a treating physician, as discussed below. See R. 26 (referring to Dr. Hornback as Plaintiff's "treating orthopedist.")

[6] In particular, the ALJ concurred with Dr. Hornback's opinion that Plaintiff was limited to sitting for two to three hours continuously and to standing and/or walking for one to two hours continuously. R. 26, 294. The ALJ stated that he also agreed with Dr. Hornback that Plaintiff was limited to sitting for a cumulative total of four to six hours in an eight-hour workday, though Dr. Hornback opined in his assessment that Plaintiff was limited to sitting for a cumulative total of three to four hours per eight-hour workday. Id.

[7] The administrative record does contain a report by Plaintiff's treating rheumatologist, Dr. Nannette Crowley, from August 2, 2007. R. 742-44. However, as Plaintiff persuasively argues, the report reflects a diagnosis of multifocal osteoarthritis of the

7

the ALJ's RFC assessment is left supported primarily by the non-examining consultants' opinions concerning Plaintiff's capacity to stand and walk.[8] See R. 514, 746.

Notably, however, the testimony or opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Furthermore, the ALJ cannot rely on the reports of non-examining sources if those reports contradict evidence from treating sources. See, e.g., Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1093-94 (11th Cir. 1985) (*per curiam*). Here, in light of the missing evidence, the ALJ's RFC assessment credits the opinions of non-examining sources over a treating source, Dr. Hornback, without substantial support from any evidence in the record. Accordingly, the Court finds that the ALJ's RFC finding is not supported by substantial evidence. The case should therefore be remanded so that the ALJ can perform a proper RFC assessment, based on evidence in the record, and apply that assessment as is appropriate in reevaluating Plaintiff's claim.[9]

---

spine, knees, feet and hands, as well as an increase in pain medication, none of which is indicative of an improvement in Plaintiff's condition. See id.; see also Pl.'s Br., pp. 18-19.

[8]The non-examining consultants referred to by the ALJ are Dr. Howard Colier and Dr. Abraham Oyewo, each of whom opined that Plaintiff could stand and/or walk for a cumulative total of six hours during an eight-hour workday. R. 514, 746.

[9]As noted above, the Court need not reach all of Plaintiff's contentions in light of its determination that remand is appropriate based on the failure to include key evidence in the administrative record and the ALJ's inadequate RFC assessment. Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all aspects. For example, in determining Plaintiff's past relevant work, the ALJ must consider whether such work was performed at the level of substantial gainful activity. See 20 C.F.R. § 404.1565(a). Moreover, if the inference of a disability onset date is required, the ALJ should follow the applicable regulations and, if appropriate, obtain the services of a medical expert to determine the onset date. See SSR 83-20, 1983 SSR LEXIS 25; Volley v. Astrue, Civil Action File 1:07-CV-0138, 2008 U.S. Dist. LEXIS 23792, at *37-50 (N.D.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

In addition, the Court notes that Plaintiff requests the inclusion of certain language in the order of remand relating to Plaintiff's possible future application for 42 U.S.C. § 406(b). See Pl.'s Reply Br., pp. 9-10. However, rather than include the language suggested by Plaintiff, the Court finds it appropriate to follow its usual practice of granting 30 days from the date of the closeout letter in which to apply for § 406(b) fees in the event that benefits are awarded on remand. See Curry v. Astrue, CV 309-068 (S.D. Ga. Dec. 9, 2010). Therefore, should the District Court adopt this Court's recommendation as its opinion, Plaintiff should be given an extension of time of 30 days from the date of the Social Security closeout letter to file for fees under § 406(b).

SO REPORTED and RECOMMENDED this ___ day of May, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

Ga. Mar. 24, 2008) (finding remand appropriate where ALJ arbitrarily selected disability onset date rather than consulting a medical advisor at administrative hearing).

9